**Rudolph Beyer and Mary Beyer, Appellants, v. William J. Wolfe, Appellee.**

**Gen. No. 7,155.**

1. EXECUTION OF INSTRUMENTS—*sufficiency of proof of writings evidencing payment of rent.* A verdict upholding the genuineness of the signatures to a purported receipt for rent and a purported cancellation of rent notes is against the weight of evidence although sustained by the direct testimony of defendant and other evidence that the landlord signed some papers at the time testified to by defendant where the landlord denies having signed the papers and four bank cashiers testify that the signatures are forgeries and defendant's story is improbable, involving the release of notes for a large sum without consideration and the application of an amount previously forfeited by defendant to the landlord on breach

by the former of a contract to buy the farm in question to the payment of rent which accrued under a lease executed after the forfeiture, and where the amounts in both writings are incorrect.

2. CONTRACTS—*sufficiency of consideration for cancellation of rent notes.* An alleged cancellation of promissory notes for $1,784 for rent and the application of $1,000 previously paid by defendant to plaintiffs on the purchase price of the farm in question and forfeited by defendant on breach of the contract is without consideration where the only consideration therefor is that defendant shall remain on the farm at a reduced rent under a valid subsisting lease executed after the forfeiture in question for a specified rental and term.

3. LANDLORD AND TENANT—*estoppel of tenant in possession to attack sufficiency of lease.* A tenant who has gone into possession of a farm under a lease not signed by the lessor's wife and never delivered cannot deny the sufficiency of the execution of the lease where he has had possession for the full term of the lease and received all the benefits therefrom.

4. NEGOTIABLE INSTRUMENTS—*burden of proof of cancellation of notes.* An instruction that the payees of notes given in payment of rent have the burden of proving their case by the preponderance of the evidence is erroneous in a distress proceeding by them to collect the rent where defendant claims payment of the rent and cancellation of the notes, basing his defense upon a receipt and written cancellation, the genuineness of both of which is disputed and which the evidence tends to show are forgeries, and there is no instruction that defendant has the burden of proving his defense of cancellation.

5. INSTRUCTIONS—*sufficiency of mandatory instruction.* A mandatory instruction is erroneous which omits an element essential to the right of recovery by the party in whose favor it is given.

Appeal by plaintiffs from the Circuit Court of Henry county; the Hon. WILLIAM T. CHURCH, Judge, presiding. Heard in this court at the October term, 1922. Reversed and remanded. Opinion filed March 16, 1923.

MARTIN E. O'CONNOR and JAMES H. ANDREWS, for appellants.

CHARLES E. MULLIGAN and JOHN T. CUMMINGS, for appellee.

MR. JUSTICE PARTLOW delivered the opinion of the court.

Beyer et al. v. Wolfe, 228 Ill. App. 429.

Rudolph Beyer and Mary Beyer, his wife, sued out a distress warrant from the circuit court of Henry county and caused a levy to be made upon certain grain belonging to appellee, William J. Wolfe. There was a trial by jury, verdict for appellee and this appeal was prosecuted.

Appellants were the owners of 223 acres of land in Kewanee township, Henry county. About January 14, 1921, appellants entered into a written contract with appellee for the sale of this land, and $1,000 of the purchase price was paid by appellee. For some reason, not appearing in the evidence, this contract was not carried out, and the $1,000 was forfeited to the appellants by agreement of the parties. On March 2, 1921, Rudolph Beyer, Theodore Beyer, his son, and the appellee and his wife, went to the office of a lawyer in Kewanee and had a lease drawn for this farm, wherein appellants leased it to appellee from March 1, 1921, to March 1, 1922, at a rental of $8 per acre. Two notes were executed for this rent, one for $800 due December 1, 1921, and one for $984, due February 1, 1922, which notes were signed by appellee and his wife. The lease was signed by Rudolph Beyer, who retained possession of it for the purpose of having it signed by his wife, after which it was to be delivered to appellee. The lease was not signed by Mary Beyer until the following December, after this controversy had arisen, and was never delivered to appellee. Appellee entered into possession of the farm and put in a crop. He failed to pay the notes when they became due and the distress warrant was issued and levied. The principal question is whether exhibits A and B, which are receipts for this rent, are forgeries.

The evidence on behalf of appellee shows that on March 5, 1921, after he had taken possession of the farm, Rudolph Beyer and his son, Theodore Beyer, went to the farm for the purpose of fixing the furnace in the house. Appellee claims that at that time he

told Beyer he was paying too much rent for the farm
and was going to throw up the lease unless some ar-
rangements could be made about it. He claims that
thereupon a new agreement was made whereby appel-
lee was to remain on the farm during the year at a
rental of $1,000 and the $1,000 which he had paid
Beyer under the contract of sale was to be applied on
the rent, and appellee was to have an option in the fall
to purchase the farm under the original contract, in
which event the $1,000 was to be applied on the pur-
chase price. Appellee contends that Beyer gave to the
appellee a receipt for $1,000, and, not having the notes
which were given for the rent, he signed a written can-
cellation of these notes, which writings were offered
in evidence as exhibits A and B. Exhibit A is a re-
ceipt to appellee for $1,000, dated March 5, 1921, "in
payment on rent for the farm," and is signed by Ru-
dolph Beyer. Exhibit B is dated March 5, 1921, is
signed by Rudolph Beyer, and recites: "This is to
certify that the rent notes, one for $874.00 and due
the 1st day of December, 1921, and one for $900.00 and
due the 1st day of February, 1922, are hereby can-
celed." Appellee testified that these two exhibits were
signed by Rudolph Beyer in his presence on March 5,
1921, in the kitchen of the house on the farm, and in
the presence of appellee, his wife, half-brother, step-
daughter and Theodore Beyer. Morris Dailey, the
half-brother of appellee, testified that he was present
in the house on the farm on March 5, and saw Rudolph
Beyer and Theodore Beyer there at that time. They
were talking with appellee about some business, but he
did not know what the business was. He saw Beyer
sign some papers, but he did not know what the papers
were. He testified that Beyer said he did not want
any one to know appellee was renting the place. He
testified that the parties were at the house practically
all morning, were in the room half an hour, and were
there for the purpose of fixing the furnace. Christina

Wolfe, the stepdaughter of appellee, testified that she was fourteen years old and in the sixth grade; that she was in the room when Beyer came to the farm on March 5; that appellee wrote out some papers and Rudolph Beyer sat down in a chair and signed them.

It is the contention of the appellants that the receipts are forgeries and that the facts testified to by the appellee and his half-brother and stepdaughter with reference to the signing of these two exhibits are not true. Rudolph Beyer and his son Theodore testified they were not in the room where it is claimed the releases were made; that they went to the cellar to fix the furnace but did not go into the house, and that the signatures of Rudolph Beyer to these two exhibits are forgeries. Appellee testified that these two exhibits were in his handwriting. Lawrence Priestly, assistant cashier of the Union State Savings Bank of Kewanee, who for many years had been acquainted with the signature of Rudolph Beyer, testified that he had examined the two exhibits, and the signatures to exhibits A and B were not the genuine signatures of Rudolph Beyer. Three other witnesses who were cashiers of banks in Cambridge and Galva testified they had compared the signature of Rudolph Beyer on the original lease with the signatures on exhibits A and B and they were not in the same handwriting.

We will not disturb the verdict of the jury unless it is clearly against the weight of the evidence. *Heide v. Schubert*, 166 Ill. App. 586; *Donelson v. East St. Louis & S. Ry. Co.*, 235 Ill. 625. The evidence here shows that the contract of January 14 was canceled and the $1,000 retained by appellants. No contention is made over the retention of this money. It was retained, apparently, by the agreement of the parties and was satisfactory to all concerned. On March 2, the lease was executed and the notes given. This transaction was by mutual agreement and was apparently satisfactory to all parties. Three days later the

transaction in question took place. It seems very strange that three days after these notes were signed that they should be voluntarily surrendered by the appellants. By that act the appellants, in effect, made a present of $1,784 to the appellee, without any apparent reason for so doing. They also credited $1,000 on the rent due for the ensuing year and gave the appellee the right to repurchase the land under the original contract, in which event the $1,000 was to be applied on the purchase price. It is uncertain, under the evidence, whether the $1,000 was to be applied on the rent and also applied on the purchase price, but we assume it was the intention that it should only be credited once. Exhibit B does not correctly state, the amount of these notes. One of them was for $800 and the other was for $984. Exhibit B states that one is for $874 and the other is for $900. The two notes which were at that time canceled were to have been surrendered, but the evidence shows that they never were surrendered and there is no evidence that there was ever any demand made upon appellants for their surrender. When the notes became due and appellee failed to pay them, he contended for the first time, according to the testimony of appellants, that he had these two receipts canceling the notes. The appellants several times requested appellee to see these alleged receipts, but the appellee refused to do so and did not produce them until the time of the trial. If appellee had valid receipts for this rent, signed by appellants, and the transaction was as testified to by the appellee, we do not see why he should refuse to produce the documents for the examination of the appellants. The appellee is the only witness who testified to the genuineness of the signatures of Beyer to these exhibits. His half-brother and stepdaughter do not pretend to say they saw Beyer sign them. They only say that appellee wrote out some papers which were signed by Beyer. On the other hand, Beyer and his son swear

positively that the exhibits were not signed by Beyer. From this evidence, taken in connection with the evidence of the four witnesses who had many years' experience in the examination of signatures, and who testify that the signatures to exhibits A and B were not the genuine signatures of Beyer, and were not in the same handwriting as the signature of Beyer on the original lease, we hold that the verdict of the jury, as to the genuineness of these signatures, was not supported by the evidence, but was contrary to the weight of the evidence.

There is another reason why the judgment must be reversed, even though the signatures to exhibits A and B were genuine and the transaction with reference thereto was as testified to by the appellee. There was no consideration for the contract which appellee claims was entered into. There must be a consideration for every valid contract and, if there is no consideration, the contract is invalid. *South Park Com'rs v. Chicago City Ry. Co.*, 286 Ill. 504. A consideration consists of a benefit to the party promising, or a loss, or detriment, to the party to whom the promise is made. By a benefit is meant that the promisor has acquired some legal right to which he would not otherwise have been entitled. A detriment is the forbearance of some legal right which he otherwise would have been entitled to exercise. 13 Corpus Juris 311. Doing what one was legally bound to do does not constitute a valid consideration and is insufficient to support a promise. *Waters v. Simpson*, 7 Ill. 570; *Stuber v. Schack*, 83 Ill. 191. The payment of part of a debt, together with an agreement to discharge the remainder of the debt, will not operate as a defense to a suit for the balance. *Hayes v. Massachusetts Mut. Life Ins. Co.*, 125 Ill. 626; *Hart v. Strong*, 183 Ill. 349. A promise to make a gift of a note is void for want of consideration. A note is not subject to a gift unless there is an actual delivery

of the note. *Badgley v. Votrain,* 68 Ill. 25; *Telford v. Patton,* 144 Ill. 611.

There is an entire absence of any evidence showing, or even tending to show, any valid consideration for this alleged promise of March 5, testified to by the appellee. Appellants had received $1,000, which is not in controversy, but which it is agreed belonged to appellants. It was not the legal duty for Beyer to pay appellee the $1,000 on the land contract, consequently the application of that payment on the notes would not constitute a legal consideration. Appellee had executed a lease and two notes. The notes were the consideration for the lease. The notes were canceled for the sole reason, as appellee testified, that he informed Beyer he was paying too much rent for the farm and was going to throw up the lease unless some other agreement could be made, and thereupon a new agreement was made, whereby the two notes were canceled. This agreement was without consideration. Appellee was to continue to occupy the farm for a year, and did occupy it without paying a cent of rent, unless the $1,000 be considered as rent. Appellee insists that the lease was not fully executed at the time the notes were surrendered, for the reason that it had not, at that time, been signed by Mrs. Beyer, and, therefore, it was not an executed lease. The evidence shows that the appellee had entered into possession of the farm before March 5, and continued in such possession during the term of his lease. He will not be heard to say that the lease was not fully executed when he accepts its terms and enjoyed all of its benefits. Assuming that the $1,000 paid was appellee's money and Beyer agreed to accept the $1,000 in full payment of the notes of $1,784, this would be a discharge of only $1,000 of the notes, and would not be a discharge of the full amount, because there was no consideration for the release of the remainder, and appellee would still owe appellants $784. *Hart v. Strong,* 183 Ill. 349.

Beyer et al. v. Wolfe, 228 Ill. App. 429.

Even conceding that exhibits A and B bore the genuine signature of Beyer, they were void because there was no consideration upon which they were based.

Complaint is made of the first, second and third instructions given on behalf of the appellee. The first instruction told the jury that the burden of proof was on the appellants to prove their case by a preponderance of the evidence. Under ordinary circumstances, the giving of this instruction would not have been erroneous. The burden of proof was on the appellants, but their case was established when the notes were admitted in evidence, then the burden of proof shifted to the appellee to prove by a preponderance of the evidence that the notes were canceled and were to be surrendered. No instruction was given telling the jury that the burden of proof was on the appellee to prove that the notes were canceled. The most important question in the case was the release alleged to have been executed by Beyer. This instruction has the effect of misleading the jury into the belief that the appellants had the burden of proof and that the appellee did not have to prove his release. Instructions should not only be applicable to the facts, but they should not be abstract propositions of law and in such general terms as to mislead the jury. *Chicago & A. R. Co. v. Utley*, 38 Ill. 411. The second and third instructions were mandatory and direct a verdict. When a mandatory instruction is given, it is necessary that it shall contain all of the elements necessary to entitle the party giving it to a verdict. Each of these instructions entirely omitted the question of consideration and for that reason each was erroneous and should not have been given. Other reasons are assigned why these instructions should not have been given, but it will not be necessary to consider them.

For the errors indicated, judgment will be reversed and the case remanded.

*Reversed and remanded.*